UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MELVIN DARNELL SIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 2:13-cv-01839-JHE |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Melvin Darnell Simmons ("Simmons") seeks review, pursuant to 42 U.S.C. §§ 405(g), 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for Supplemental Security Income ("SSI") benefits. Simmons timely pursued and exhausted his administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Simmons was a fifty-two year old male at the time of his hearing before the Administrative Law Judge ("ALJ") on April 12, 2012. (Tr. 37). Simmons has an eleventh-grade education, (tr. 37), and previously worked as a materials handler, building maintenance repairer,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

and brick mason. (Tr. 54).

Simmons applied for SSI on April 14, 2010, alleging an initial onset date of August 19, 2009. (Tr. 21). Simmons's application was denied on October 15, 2010, and Simmons requested a hearing before an ALJ. (Tr. 21). After a video hearing, the ALJ denied Simmons's claim on April 20, 2012. (Tr. 21-30). Simmons sought review by the Appeals Council, but the council denied his request on August 6, 2013. (Tr. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. Simmons then initiated this action on October 4, 2013. (Doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This court will determine that the ALJ's decision is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* Factual findings supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the

---

[2] In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

[ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for SSI as well as establish entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform his past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d

---

[3] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised April 1, 2013.

1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps on and two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); accord *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Simmons has not engaged in substantial gainful activity since the application date. (Tr. 23). At Step Two, the ALJ found Simmons had the following medically determinable impairments: arthralgias and substance abuse disorders. (*Id.*) However, the ALJ determined neither of the impairments was severe, alone or in combination. (*Id.*). Therefore, the ALJ determined Simmons is not disabled and denied his claim. (Tr. 27).

### V. Analysis

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75) ("The Secretary's failure to apply the correct legal standards or to provide the

reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted).  In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4]  However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).  The court must review the Commissioner's decision and determine whether it is supported by substantial evidence and if he applied the correct legal standards. *Wilson*, 284 F.3d at 1221.

Simmons contends the ALJ's decision is not supported by substantial evidence because the ALJ: (1) failed to properly consider Simmons's impairments under the Eleventh Circuit's "slight abnormality" standard, (doc. 13 at 5-7), and (2) failed to properly evaluate the medical evidence of record from nurse-practitioner Janet McCary, (*id.* at 7-12).

### A.  The ALJ Properly Applied the Relevant Legal Standard

Simmons asserts the second step of the ALJ's analysis is a "threshold inquiry . . . [that] allows only claims based on the most trivial impairments to be rejected."  (Doc. 13 at 5) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).  "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031.  The Commissioner acknowledges this is the proper standard. (Doc. 14) (quoting *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987), for substantially

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

similar language).  Plaintiff and the Commissioner part ways on the existence and severity of the alleged abnormalities.

Simmons points to various hospital records chronicling a series of unrelated, acute issues. First, Simmons points to an emergency room visit in January 2010, (doc. 13 at 6) (citing tr. 179-181), in which Simmons was diagnosed with degenerative joint disease that, at least at that time, produced an entirely normal physical exam except for "mild distress," "left knee soft tissue tenderness," and "small if any swelling," (tr. 180-81).

Next, Simmons notes he was seen two months later for "similar leg pain" and "it was noted that deep vein thrombosis needed to be ruled out." (Doc. 13 at 6) (citing tr. 175-77). However, that pain is not "similar":  it was a different leg and not joint related.  (Tr. 175 ("Patient complains of pain in the medial proximal right thigh for at least 3-4 days."), 181 (normal exam except for left knee tenderness)).  The March 2010 record does mention Simmons claimed to have a similar pain on the left side in December, (tr. 175), but the January record only shows objective evidence of joint issues, (tr. 181).  Moreover, the diagnosis is simply "leg pain" with no indication of an underlying condition.  Simmons points to UAB emergency room records indicating he was "admitted for several days due to leg swelling and pain." (Doc. 13 at 6) (citing tr. 297-300).  A review of those records show he was admitted for potential cellulitis, deep vein thrombosis ("DVT") (despite no evidence of DVT in either lower extremity), and hyponatremia, (tr. 300), and, after surgery to drain an abscess and antibiotics for the cellulitis (secondary to the abscess), he was discharged (without any further mention of DVT), (tr. 297).

Simmons also points to two dates he was seen by nurse-practitioner Janet McCary in May and July 2010, noting he was seen for "pain all over," but especially joint and low-back pain, and significant hypertension.  (Doc. 13 at 6) (citing tr. 187-88).  The diagnoses were hypertension

6

and arthralgia (joint pain), with an acknowledgement of noncompliance with medications on the former and no underlying condition for the second. (Tr. 186-88). Both visits are based primarily on Simmons's own subjective statements, which the ALJ dismissed as noncredible. (*See* tr. 26, 187-88). The ALJ cited the lack of objective evidence to support Simmons's allegations of disabling pain in conjunction with his unsteady work history and long history of substance abuse suggesting a strategic motive to seek disability. (Tr. 26) (citing tr. 125 & 297).

Then, Simmons cites time spent at Cooper Green in August 2010 for "acute renal failure and rhabdomyolysis." (Doc. 13 at 6) (citing tr. 231-33). However, Simmons fails to note the acute renal failure was secondary to the rhabdomyolysis, both of which responded well to aggressive rehydration. (Tr. 232). Upon discharge, diagnostic tests were normal, and Simmons was released to full-time work "ASAP." (Tr. 192). Diagnostic imaging in July and August 2010 showed no abnormalities and only mild chronic obstructive pulmonary disease. (Tr. 220-22).

Last, Simmons notes he "underwent surgery for an unstable left shoulder with degenerative changes in the humeral head." (Doc. 13 at 7) (citing tr. 293-94). While it is true he had a "recurrent dislocation" before the surgery, there were no other abnormalities and Simmons cites no evidence to support there was any impairment after the surgery. (Tr. 284-86 & 289). In May and June 2011, he reported his pain was zero. (Tr. 238-39). In October 4, 2011, McCary noted that Simmons appeared in no acute distress and that she had "explained [to Simmons] again there will be no narcotics in the [treatment] of [his shoulder pain]" and concluded they "continue conservative [treatment]." (Tr. 234). Further, as previously noted, the ALJ found Simmons's testimony at the hearing that the range of motion in his shoulder was limited by pain was not credible. (Tr. 26).

Simmons also argues the ALJ's decision cannot be based on substantial evidence because

SSR 96-8p requires the ALJ to consider the impact of both severe and non-severe impairments on the ability to work. (Doc. 13 at 7). However, SSR 96-8p deals with "assessing residual functional capacity in initial claims," and, here, the ALJ determined the combination of Simmons's impairments were not "severe," meaning, considered all together, his impairments do not "significantly limit[] an individual's ability to perform basic work activities." (Tr. 22-23). If there is no severe medically determinable combination of impairments, the plaintiff is not disabled. *See McDaniel*, 800 F.2d at 1030 ("A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"). As a result, Step Four is never reached and the plaintiff's residual functional capacity is not determined in preparation for it.

Regardless of whether Step Four is reached, the ALJ must, in Step Two, consider all of the impairments and determine whether they, in combination, significantly limit Simmons's ability to perform his basic work activities. The ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," (tr. 24), and there is substantial evidence to support his conclusion Simmons has not even met the low bar of showing his impairments are severe, separately or in combination.

### B. The ALJ Properly Discounted McCary's Opinion

Simmons also contends the ALJ's decision is not supported by substantial evidence because he improperly discounted the medical evidence of record from a treating source. (Doc. 13 at 7-13). The source at issue is nurse-practitioner McCary, who in March 2011 completed a Physical Capacities Evaluation ("PCE") and Clinical Assessment of Pain ("Pain Form") based on her treatment of Simmons. (*Id.*).

McCary, however, is not a "treating source" for purposes of the regulations. A "treating

source" is the plaintiff's "own physician, psychologist, or other *acceptable medical source* who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [him]." 20 C.F.R. § 404.1502 (emphasis added). An "acceptable medical source" is defined in 20 C.F.R. § 404.1513(a) and includes licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. Nurse-practitioners, on the other hand, are clearly excluded from this group by their explicit listing under "other sources." 20 C.F.R. § 404.1513(d)(1) ("Other sources include, but are not limited to . . . Medical sources not listed in paragraph (a) of this section (for example, *nurse-practitioners* . . . ).") (emphasis added). "Information from these 'other sources' cannot establish the existence of a medically determinable impairment," but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. Therefore, contrary to Simmons's assertions, "the opinions of [a] nurse practitioner are not evaluated under the treating physician standard. While the opinions must be considered, *see* 20 C.F.R. § 916.913(d)(1), standing alone they are not entitled to any particular deference." *Baliles v. Astrue*, No. 8:10-CV-1049-T-TBM, 2011 WL 3961818, at \*6 (M.D. Fla. Sept. 8, 2011).

Moreover, the ALJ did not discount McCary's opinion merely because she was not an "acceptable medical source," *cf. Colon v. Colvin*, No. 8:12-CV-02011-T-27, 2013 WL 4890312, at \*6 (M.D. Fla. Sept. 11, 2013), but explained why he was giving her opinion little weight, (tr. 27). Although noting "McCary is not an acceptable medical source," he also stated:

> there is no significant context or explanation provided for these limitations apart from listing "knee pain . . . ankle pain . . . shoulder dislocation (recurrent)" as if they were prima facie evidence of disabling symptoms, and this assessment is utterly unmirrored in the objective record, for the reasons given above.

(Tr. 27). In response to the ALJ's statement regarding context and explanation, Simmons argues

the "PCE and Pain Form are supplemental to the medical evidence of record and the context and explanation are provided by both." (Doc. 13 at 11). However, the ALJ is correct the forms themselves present no context or explanation, (*see* tr. 224-28), and the ALJ goes on to note the assessment does not reflect the objective record that supposedly gives it context, (tr. 27).

Simmons responds to this statement regarding the record by asserting a "consistent history of treatment for hypertension, low back pain, bilateral knee pain, ankle pain with screws in the right ankle, and hepatitis C," (doc. 13 at 10), then cites to evidence showing a disparate history of joint pain in the left leg, (*id.*) (citing tr. 179-81); muscle pain in the right leg, (*id.*) (citing tr. 175-77); pain from an abscess and accompanying infection, (*id.*) (citing tr. 297-300); treatment based on Simmons's own subjective accounts of "pain all over," (*id.*) (citing tr. 187-88); acute renal failure from rhabdomyolysis, (*id.*) (citing tr. 231-33); and surgery on a dislocated shoulder with degenerative changes, (*id.* at 10-11) (citing tr. 293-94). Simmons does not explain how a series of apparently unrelated pains and illnesses support McCary's opinion of his limitations as severe and chronic, especially where many of them appear to be extremely mild or to have gone away, (tr. 232 (rhabdomyolysis and renal failure responded well to aggressive hydration), 234 (McCary recommends "conservative treatment" of shoulder pain), 238-39 (Simmons states his pain number is zero on two separate occasions), 297-98 (wound was improved after surgery and antibiotics)). He cites to nothing in the records to indicate impairments from his hepatitis C and hypertension.[5]

Because McCary's opinion is not entitled to any particular deference and the ALJ's decision is supported by substantial evidence, the ALJ did not err by giving McCary's opinion

---

[5] There is also evidence in the medical record, acknowledged by the ALJ, that Simmons's hypertension may be exacerbated by his failure to comply with medical advice and take the prescribed medications. (Tr. 25, 170, 187). This undermines both his credibility and any assertion his hypertension is causing or contributing to disabling symptoms.

little weight.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED** and this action is due to be **DISMISSED WITH PREJUDICE.** A separate order will be entered.

DONE this 9th day of March 2015.

                                              **JOHN H. ENGLAND, III**
                                              UNITED STATES MAGISTRATE JUDGE